**Rolando R. LUNA, Plaintiff,**

v.

**CITY AND COUNTY OF DENVER, Department of Public Works, Stapleton International Airport, Jack W. Brennan, in his official capacity; Robert Storck, in his official capacity as Chief Construction Engineer, Stapleton International Airport; William E. Smith, in his official capacity as the Assistant Director of Aviation (Engineering), Stapleton International Airport; and Herb Abshire, in his official capacity as the Director, Career Service Authority, City and County of Denver, Defendants.**

**Civ. A. No. 87–B–1380.**

United States District Court,
D. Colorado.

Sept. 1, 1989.

George C. Aucoin, Richard Hipp, Hackethal, McNeill and Aucoin, Lakewood, Colo., for plaintiff.

Geoffrey S. Wasson, Asst. City Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This matter is before the Court on defendants' motion for Partial Summary Judgment and Partial Judgment on the Pleadings pursuant to Fed.R.Civ.P. 56 and 12(c) respectively. Plaintiff Rolando R. Luna (Luna) alleges in his complaint that defendants discriminated against him based upon his national origin, Asian–American Filipino, when defendants failed to promote him and promoted instead an anglo. Defendants contend that summary judgment should be granted in their favor on Luna's claims under 42 U.S.C. § 1981 because those claims are barred by the Supreme Court's recent decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Defendants also argue that Luna's § 1981 claims should be dismissed because he has failed to plead a § 1981 case under another recent Supreme Court decision, *Jett v. Dallas Independent School District,* —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), or, alternatively, summary judgment should enter under the rule of that case. Oral argument will not materially assist in ruling on these motions. I deny defendants' Fed.R.Civ.P. 56(c) motion for the reasons stated in Part I, deny their Fed.R.Civ.P. 12(c) motion for the reasons stated in Part II, but grant their motion for summary judgment for the reasons stated in Part III.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate when the Court can conclude that no reasonable juror could find for the non-moving party on the basis of the evidence presented in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must present sufficient evidence so that a reasonable juror could rule in the non-moving party's favor. *Id.* Further, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex, supra.*

## I.

■ In *Patterson v. McLean Credit Union, supra,* the Supreme Court considered the question whether a promotion claim, such as the one here, is actionable under § 1981. The Court stated that whether such a claim is actionable "depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id.* 109 S.Ct. at 2377. The Court then held that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981," such as the refusal of a law firm to accept an associate into partnership. *Id.* at 2377.

Defendants argue that the promotion at issue here did not present Luna with the opportunity to enter into a new and distinct relationship with defendant The City and County of Denver (the City). In support of their position, defendants submit the affidavit of Ms. Maxine Kurtz, a senior personnel specialist and attorney employed by the Denver Career Service Authority. In her affidavit, Ms. Kurtz presents numerous examples of how Luna's employment contract upon promotion would be a continuation of his present contract with the City.

In response, Luna presents the official job descriptions and qualifications for appointment for the position of Project Inspector I, Luna's present job, and Engineer III, the position to which he was seeking promotion. These exhibits reflect substantial differences between the two positions

in supervisory responsibility, duties performed, and required qualifications.

Luna also presents evidence to refute some of the information contained is Ms. Kurtz's affidavit. Specifically, Luna provides the Court with a memorandum from the City to Luna which demonstrates another difference between the two positions: Luna is presently required to use the time clock and is entitled to overtime pay as opposed to the position of Engineer III which is exempt from these requirements.

Accordingly, I conclude that Luna has met his burden as the non-movant under the provisions of Fed.R.Civ.P. 56(c). Based upon the evidence presented, a reasonable juror could find that the change in position from Project Inspector I to Engineer III would provide Luna with the opportunity to enter into a new and distinct contractual relationship with the City. Hence, Luna's claim that defendants discriminated against him because of his national origin when they failed to promote him to the position of Engineer III and hired instead an anglo, is actionable under § 1981.

■■■■ Defendants argue, nevertheless, that resolution of this issue is one of law for the court, not one of fact for the jury. Defendants base their argument on one sentence in *Patterson v. McLean Credit Union, supra:* "In making this determination [of whether the employer's refusal to enter the new contract is actionable under § 1981, a lower court should give a fair and natural reading to the statutory phrase 'the same right ... to make ... contracts,' and should not strain in an undue manner the language of § 1981." *Patterson v. McLean Credit Union, supra* at 2377. Defendants further argue that this language is consistent with Colorado law holding that the construction of a contract is a question of law for the court. Defendants' argument is misplaced.

Although *interpretation* of a written contract is generally a question of law for the court, *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984), where, as here, the *existence* of a contract is at issue, and the evidence is conflicting or admits of more than one inference, it is

for the jury to decide whether the parties have entered into a contract and whether a contract in fact exists. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986) (Emphasis added).

## II.

■■■ In the alternative, defendants argue that because Luna's complaint fails to allege that it has been the City's policy to discriminate against him or members of his class as required by *Jett v. Dallas Independent School District, supra,* Luna's § 1981 claims should be dismissed pursuant to Fed.R.Civ.P. 12(c). I disagree.

At this stage of the litigation, I must accept Luna's allegations as true. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In *Jett v. Dallas Independent School Dist., supra,* the Supreme Court held that in order to prevail on a claim for damages plaintiff must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and subsequent cases. *Id.* 109 S.Ct. at 2722.

In *Monell, supra,* the Supreme Court held that a municipality may be sued directly for a constitutional tort committed as a result of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. *Id.* at 690, 98 S.Ct. at 2035–2036. The Court further held that § 1983 also authorizes suit for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. *Id.*

Here, Luna alleges in paragraph 31 of his amended complaint that the acts and omissions of the defendants were pursuant

to the Personnel Rules and Procedures known to the City employees which had received formal approval of the defendant, Denver City Council. Accordingly, I conclude that Luna has adequately plead a claim under § 1981 and defendants' motion for judgment on the pleadings is therefore denied.

### III.

■ Finally, defendants argue that, even though *Patterson, supra,* may not warrant summary judgment and although Luna may have plead adequately a claim for relief under § 1981, summary judgment on that claim still should be granted in their favor. Defendants' argument is based on the proposition that they, sued in their official capacities, cannot be held to have the required final policymaking authority as set forth in *Jett v. Dallas Independent School District, supra,* such that their decisions may be said to represent the official policy of the City and subject them to liability. I agree.

The Supreme Court has rejected *respondeat superior* as a basis for holding a state actor liable under § 1983 for a violation of the rights enumerated in § 1981. *Jett v. Dallas Independent School District, supra.* Rather, the express "action at law" provided by § 1983 is the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor. *Id.* Moreover, a plaintiff must demonstrate that the violation of his § 1981 "right to make contracts" was caused by a custom or policy of an official with final policymaking authority whose actions could subject the city to liability under § 1983. *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

In *St. Louis v. Praprotnik, supra,* a plurality of the Supreme Court reaffirmed prior cases which held that whether a particular official has final policymaking authority is a question of state law. The Supreme Court has further stated that the identification of those officials whose decisions represent the official policy of the local governmental unit is a legal question

to be resolved by the trial judge before the case is submitted to the jury. *Jett v. Dallas Independent School District, supra* 109 S.Ct. at 2723. Moreover, "[o]nce those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur ... or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Id.* (citations omitted) (emphasis in original).

In *St. Louis v. Praprotnik, supra,* the Supreme Court reversed the Eighth Circuit Court of Appeals' determination that a supervisor who transferred the plaintiff architect had authority to establish final employment policy for the city. The Eighth Circuit based its conclusion on these factors: 1) the decisions of these supervisors were not individually reviewed for "substantive propriety" by higher supervisory officials; and 2) the Civil Services Commission decided appeals from such decisions, if at all, in a circumscribed manner that gave substantial deference to the original decisionmaker. *Id.* The Supreme Court held, however, that these factors were insufficient to support the conclusion that the supervisors were authorized to establish employment policy for the city with respect to transfers and layoffs. *Id.* The Court stated that a mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority. *Id.*

Here, Luna is employed by the City and County of Denver as a Project Inspector I at Stapleton International Airport. Such employment is governed by the provisions of the Denver City Charter (the Charter). The relevant provisions of the Charter create a Career Service Board (the Board). Charter, § C5.24. The Board is to make personnel rules governing, *inter alia,* the area of Career Service promotions. § C5–25 and C5–25–1. While the Board is given broad discretion in fashioning these rules, the Board must defer to the Charter

as organic law. Cf. *City and County of Denver v. Gibson,* 37 Colo.App. 130, 546 P.2d 974 (1975) (Civil Service Commission).

The Charter specifies at § C5.25–2 that the personnel rules shall provide that:

(3) No discrimination shall be made because of race, color, creed, national origin, sex or political affiliations.

The personnel rules, Section 3–30, *et seq.,* detail the procedure to be followed for promotions. The promotional policy of the Board is "to fill vacant positions, whenever practicable, by promotion of employees who on the basis of competitive examination designed to determined fitness and ability are best qualified for advancement." Section 3–31. Section 19–10(c) of the personnel rules further provides that a *de novo* appeal to an independent hearings officer appointed by the Board will lie for:

Any action of any officer or employee resulting in alleged discrimination because of race, color, creed, national origin, sex, age, political affiliation, or sexual orientation.

*See O'Neill v. Dept. of Revenue, Treasury Division,* 765 P.2d 590 (Colo.App.1988).

Based upon the Supreme Court's holding in *St. Louis v. Praprotnik, supra,* and *Jett v. Dallas Independent School District, supra,* I conclude that the defendants sued in their official capacities here cannot be held to have the final policymaking authority regarding Luna's promotion. Luna had a right of appeal to the hearings officer, who reports "solely and directly" to the Board. Personnel Rules, Sections 2–81 and 2–100, *et seq.* Therefore, the Board is the final policymaking authority regarding Luna's promotion.

It is undisputed that Luna submitted his case to a hearings officer at the Career Service Authority, but when Luna did not receive a response for more than 30 days, he submitted his case to the Equal Employment Opportunity Commission. Because Luna did not appeal his case to a hearings officer and because no appeal was taken to the Board, there has been no final policy decision regarding Luna's promotion that could be considered a custom, policy, or standard operating procedure of the final policymaking authority. Accordingly, as a matter of law, on the undisputed facts of this case, defendants may not be held liable for damages under § 1981 because no action was taken pursuant to official municipal policy, and the Board is not a party to this action.

Accordingly, it is hereby ORDERED that:

1) Defendants' motion for partial summary judgment based upon the Supreme Court's decision in *Patterson v. McLean Credit Union, supra,* is DENIED.

2) Defendants' motion for partial judgment on the pleadings is DENIED.

3) Defendants' motion for summary judgment on Luna's § 1981 claim based upon the Supreme Court's decision in *Jett v. Dallas Independent School District, supra,* is GRANTED. Luna's § 1981 claim against the defendants is DISMISSED.